UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____          │
│ DATE FILED:  09/29/2020              │
└─────────────────────────────────────┘
```

FRANKLIN MATEO,

                           Plaintiff,

     -against-                                        18-CV-03499 (NSR)
                                                      OPINION & ORDER
WESTCHESTER COUNTY, et al.,

                           Defendants.

NELSON S. ROMÁN, United States District Judge:

       *Pro se* Plaintiff, Franklin Mateo ("Plaintiff" or "Mateo"), a inmate at Westchester County Jail

("WCJ"), commenced the instant action on or about December 15, 2017 asserting claims pursuant 42

U.S.C. § 1983 ("Section 1983") against Westchester County ("Westchester"), Westchester County

Department of Corrections ("Westchester DOC"), Commissioner Kevin Cheverko ("Cheverko"),

Aramark Correctional Services, LLC ("Aramark"), four Aramark employees, Food Service Director

Manual Mendoza ("Mendoza"), Charles Butler ("Butler"), Coffey Kohli ("Kohli"), Penny Stewart

("Stewart"), and Craig Boissy ("Boissy"). (ECF No. 2 , Complaint ("Compl.") at 1-5.)  Presently before

the Court is Defendants' motion pursuant to  Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") seeking to dismiss

Plaintiff's Complaint for failure to state a plausible claim. (ECF No. 39.)

## BACKGROUND

       Plaintiff commenced this action asserting multiple causes of action seeking monetary and punitive

damages against the Defendants arising out of the food service provided to him as an inmate at WCJ. *(See*

*generally* Compl.)  Plaintiff sets forth eight causes of action: 1) a Section 1983 claim pursuant to *Monell*

*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against Westchester for its failure to properly train and

supervise, as well as a pattern of serving food that is nutritionally inadequate, not fresh, or religiously

inappropriate; 2) a Section  1983 claim for violation of the Free Exercise Clause of the First Amendment

as against all Defendants; 3) a claim pursuant to the Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA") 42 U.S.C. §§ 2000cc-1, *et seq*., as against all Defendants for burdening Plaintiffs' religious freedoms; 4) a Religious Freedom Restoration Act ("RFRA") 42 U.S.C. § 2000bb-1 claim against all Defendants for violation of Plaintiff's religious freedoms; 5) a Section 1983 claim against all Defendants for failure to intervene in violation of the Eighth amendment evincing deliberate indifference; 6) a claim for failure to intervene against Westchester and Cheverko; 7) a claim against all Defendants for religious discrimination; and 8) a claim for violation of the Equal Protection Clause of the Fourteenth Amendment as against all Defendants for the inadequate quality of food served at WCJ or its conformity to religious dietary standards. (*Id.* at 1-2, 22-27.) Plaintiff also ask this court to consider any other causes of action he may have omitted. (*Id.* at 27.)

Plaintiff attaches multiple documents to the Complaint, including deposition transcripts of various witnesses from *Pagan v. Westchester County*, 12 Civ. 7669 (PAE) (JCF), 2014 U.S. Dist. LEXIS 33408 (S.D.N.Y. 2014). (*Id.* at 31.) Plaintiff request that the Court take judicial notice of two previously filed actions *Pagan* and *Perez v. County of Westchester,* 83 F. Supp. 2d 435 (S.D.N.Y. 2014), which alleged involved misconduct at WCJ. (*Id.* at 6-7.) The complaint does not elaborate as to the reason for requesting notice of *Perez*, however, Plaintiff alleges that the *Pagan* case involved similar conduct and that Defendants failed to take corrective action despite notice of substandard food service. (*Id.* ¶¶ 41-42.)

Defendants assert that 1) the complaint contains only conclusory allegations; 2) that judicial notice of the two other WCJ cases cannot be used to establish the truth of matters asserted in those cases; 3) that the depositions are not incorporated simply due to their attachment to the complaint; 4) Plaintiff failed to plead personal involvement of the individually named defendants; 5) Plaintiff failed to plead a custom or violation sufficient to establish a right to relief under *Monell*; 6) the conditions of confinement failed to rise to the level of 'cruel and unusual punishment' as is required to establish an Eight Amendment violation; 7) Plaintiff failed to establish that a sincerely held religious belief was burdened as

a result of Defendants' conduct; 8) Plaintiff failed to plead facts establishing an Equal Protection violation; 9) RLUIPA does not authorize claims for money damages and Plaintiff's request for declaratory relief is moot as he has been transferred from WCJ; 10) RFRA does not provide a cause of action; and 11) Cheverko is entitled to qualified immunity from the instant suit. (*Id.* at 10-26.)

## STATEMENT OF FACTS

The following facts are taken from Plaintiff's Complaint and are accepted as true for the purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) *quoting  Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

During all relevant times as outlined in the Complaint, Plaintiff was a  pretrial detainee at WCJ. (Compl*.* ¶ 74.) Subsequently, Plaintiff was transferred to the Mid-State Correctional Facility, which is not operated by Westchester. Plaintiff asserts  that WCJ contracted its responsibility to provide nutritiously adequate and religiously-conforming food to inmates to Aramark. While at WCJ, Plaintiff was served food which was rotten, stale, undercooked, contaminated with hair and insects, small food portions were provided to save funds,  salads were soggy and/or brown, and the food trays upon which the meals were served were unclean, unsanitary and foul smelling from rotten water sitting upon it. Plaintiff alleges he found hair in his meals on numerous occasions including on November 13, 2017. Because of the inadequate food, Plaintiff suffered and/or experienced nausea, vomiting, and significant loss of weight. On November 15, 2017, Plaintiff attempted to file a grievance regarding hair in his meal but  Sgt. Casteleberry instructed him to mail his grievance to Aramark which was contrary to established WCJ grievance procedures. (*Id*. ¶ 75.) Plaintiff asserts Sgt. Casteleberry's interference  posed an impediment to his ability to avail himself to and exhaust administrative remedies. (*Id.* ¶ 77.) Other inmates at the facility misrepresent their religion to prison officials in order to receive what they believed would be fresher food. (*Id*. ¶¶ 19-20.) For example, inmates who identify as Jewish may receive a kosher meal.

The Complaint also suggest that other detainees complained of religious inadequacies with the

food they were served at WCJ. Inmate Gomez purportedly misrepresented that he was Jewish in order to receive kosher meals that were believed to be more nutritious but he also received meals that were undercooked, rotten, browning, soggy, and contained live insects, stale and/or moldy bread,  served on dirty trays, and which sometimes contained human hair. (*Id.* ¶¶ 23-27.) Another inmate named Spotard, an avowedly sincere "Jewish believer" made similar claims about the quality of the kosher food, and was served fish despite prison official's knowledge that he was allergic to it. (*See id.* ¶¶ 50-60.)  Spotard also claimed that  an unnamed Sergeant made an anti-Semitic remark towards him. (*Id.* ¶ 58.) Bethune, a Muslim inmate, claims that he was initially forced to eat non-Halal foods while his request for a religiously-conforming diet was being processed. (*Id.* ¶ 62.) Bethune makes similar claims about food quality and also claims that he was served bologna by Defendants despite his Muslim affiliation. (*See id.* ¶¶ 61-68.) Plaintiff claims that Defendants had notice of the various issues with food service by way of the  many inmate grievances filed and prior lawsuits which were based on similar conduct, but failed to take corrective or investigative action. (*Id*. at 2, 6-7; ¶¶ 37-42.) Plaintiff also claims that kosher meals were decreased due to Defendants' beliefs that inmate were falsely affiliating themselves with the Jewish faith    in an effort to obtain better quality food. (*Id.* ¶¶ 31-32.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may assert a responsive pleading to a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). In assessing the plausibility of a complaint, a court must accept the factual allegations in the complaint as true. *Id*. at 678. Conclusory legal statements, unsupported by facts which raise the request for relief above a "speculative level on the assumption that all the allegations in the complaint are true" are to be disregarded. *Twombly*,

550 U.S. 554 at 556.

When analyzing a complaint by a *pro se* plaintiff unrepresented by legal counsel, a court should read it liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). A 12(b)(6) motion to dismiss a *pro se* complaint should only be granted if the complaint raises no plausible right to relief under any set of facts she could plausibly prove. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A liberal construction of a *pro se* plaintiff's complaint is especially important if it includes an allegation of civil rights violations. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). However, even a *pro se* plaintiff's complaint must plausibly set out entitlement to relief with sufficient factual allegations. *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y 2010). A court liberally construing a *pro se* complaint is not required to re-write it or ignore the lack of an element essential to an entitlement to relief. *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

The present motion is unopposed by the Plaintiff. However, failure to oppose a motion to dismiss is not in itself grounds for dismissal. *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) ("The same principle [as applies to Fed. R. Civ. P. 12(c) motions] is applicable to a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss an action on the basis of the complaint alone."). Since the veracity of well-pled facts in the complaint is not in dispute during 12(b)(6) proceedings, the court is only required to rule on matters of law, which it is equipped to do regardless of the lack of opposition from a plaintiff. *Id*. at 322-323. Thus, the legal standard for a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted does not change based on the presence or absence of reply from a plaintiff. *See id.*

## DISCUSSION

Defendants assert that the deposition transcripts attached to Plaintiff's complaint should not be considered or deemed incorporated to the pleading when considering their Rule 12(b)(6) motion. (Defs.'

Mot. at 12.) Defendants assert  "[i]t is well settled that a Court cannot consider documents outside the pleadings on a . . .  motion to dismiss unless documents are incorporated by reference in the complaint or are integral to [it]" and that Plaintiff has not made a clear and substantial reference to the deposition transcripts nor explained their importance, they cannot be used. (*Id.* at 12-13.) Defendants assertion is somewhat misleading.

"In considering a motion to dismiss for failure to state a claim . . . a district court may consider the facts alleged in the complaint, *documents attached to the complaint as exhibits*, and documents incorporated by reference in the complaint [emphasis added]. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("For the purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements incorporated in it by reference.'") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *Rosado-Acha v. Red Bull GmbH*, 15 Civ. 7620 (KPF), 2016 U.S. Dist. LEXIS 84543, at \*17-18 (S.D.N.Y 2016); *Accurate Grading Quality Assur., Inc. v. Thorpe*, 12 Civ. 1343 (ALC), 2013 U.S. Dist. LEXIS 42760, at \*17 (S.D.N.Y 2013); *Deluca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 59-60 (S.D.N.Y. 2010). While it is true that under Fed. R. Civ. P. 12(d) when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgement . . . [and] all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion", the foregoing cases make it clear that the deposition testimony attached to the complaint is not a 'matter outside the pleadings' but rather an exhibit attached to the complaint, constructively part of the complaint itself, and thus properly considered by the court in its ruling on the present motion. Fed. R. Civ. P. 12(d). Further, the policy interest behind the summary judgement conversion rule is notice to the plaintiff of the

documents to be relied upon in a motion to dismiss. *Cortec Industries, Inc.*, 949 F.2d at 48 ("A finding that plaintiff had notice of documents used by defendant in a 12(b)(6) motion is significant . . ."). Here, since Plaintiff attached the testimony to his complaint, there is no concern that Plaintiff lacked notice of their contents. Further, Defendants cannot invoke a parallel policy argument claiming a lack of notice on their part, as the testimony was made available to them via the complaint prior to their filing the present motion to dismiss.

Defendants further claim in their motion that while it is unclear from the complaint why Plaintiff requested that the Court to take judicial notice of *Pagan* and *Perez*, it can be construed as an attempt to "provide factual support for the claims in this lawsuit", an improper undertaking, since a court may not take judicial notice of documents related to other proceedings for the purpose of establishing the truth of matters asserted in those separate cases. (Defs.' Mot. at 11-12.) Under the Fed. R. Evid. 201(b), a court may take notice of "a fact that is not subject to reasonable dispute because it: 1) is generally known within the trial court's territorial jurisdiction; or 2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). *See also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). This is so because "the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross examination, and argument to attack contrary evidence and caution must be used in determining that a fact is beyond controversy. (*Id.*) Additionally, while collateral estoppel prevents the relitigation of settled issues by the same parties, since legal and business practices change over time, facts introduced by way of judicial notice of previous legal proceedings may have less probative value to the matter at hand than a full development of the record by traditional means. (*See id.* at 70-71) ("[P]revailing trademark search practices may well have changed or developed in the intervening years . . . . Since the industry practice is subject to dispute, ISCYRA is entitled to "have its 'day in court' and, through time-honored methods, test the accuracy of [Hilfiger's] submissions and introduce evidence of its own.") (quoting *Oneida Indian*

*Nation of New York v. State of New York*, 691 F.2d 1070, 1086 (2d Cir. 1982)). Thus, "courts routinely take judicial notice of documents filed in other courts, [ ] not for the truth of matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Here, Plaintiff's complaint does not assert that he is seeking judicial notice of *Pagan* and *Perez* in order to establish the veracity of his claims of food inadequacy. Nor does Plaintiff allege that those prior cases – or issues of fact resident in them – were resolved correctly. Construing the *pro se* complaint liberally, the reasonable interpretation is that Plaintiff seeks to establish that Defendants had notice that WCJ inmates were having problems with the quality of the food served at the facility. (*See* Compl. at 2, 6-7; ¶¶ 34, 36-42, 66-67, 70-72, 75, 77.) Plaintiff alleges that he and other inmates reported multiple grievances to various prison authorities, with varying responses from those authorities. (*Id.*) Without assuming the veracity of any questions of fact or law resolved in *Pagan* or *Perez*, and using those cases only to prove their existence, it is notable and relevant that multiple plaintiffs in each case named many of the same defendants as are named in this lawsuit, for conduct arising out of WCJ involving complaints about inmate food. *See generally, Pagan,* 2014 U.S. Dist. LEXIS 33408; *Perez,* 83 F. Supp. 2d.435. To the extent that the existence of these cases has probative value on the issue of notice, the Court will deem the documents incorporated.

Plaintiff asserts a cause of action under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq*. (Compl. ¶¶ 91-93.) Plaintiff claims that Defendants collectively violated his religious freedom and such violation [sic] contradict RFRA." (*Id.* ¶ 92.)  RFRA, as enacted, prohibits "[g]overnment . . . from substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability. 42 USC § 2000bb-1(a). The statute only allows such conduct if the "application of the burden to the person — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental

interest. 42 U.S.C. § 2000bb-1(b). The statute allows for violations of this mandate to be asserted as a

claim or defense in judicial proceedings. 42 U.S.C. § 2000bb-1(c). The law was initially enacted to apply

to federal as well as state governments and their subdivisions. 42 U.S.C. § 2000bb-2. *See also City of*

*Boerne v. Flores*, 521 U.S. 507, 516 (1997). However, RFRA has been struck down as against states by

the Supreme Court, which held that the law exceeded Congress' constitutionally-granted legislative

powers including its enforcement power under § 5 of the Fourteenth Amendment. *Id.* at 536. Since the

"Supreme Court has invalidated RFRA as applied to States and their subdivisions," no claim can arise

against them under the statute and Plaintiff's RFRA claims should be dismissed. *See Ross v. Aramark*

*Corp.*, 18 CV 2246 (VB), 2019 U.S. Dist. LEXIS 40715, at *17 (quoting *Cutter v. Wilkinson*, 544 U.S.

709, 715 (2005)). Moreover,  Plaintiff's allegations fails to plead any facts that would indicate an

implication, much less a violation, of his religious freedoms. (*See id.* ¶¶ 74-80.) Accordingly, the claim is

dismissed without prejudice as to the individually named Defendants, and dismissed with prejudice as to

the state entity(s).

Plaintiff also asserts a cause of action under the Religious Land Use and Institutionalized Persons

Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. (Compl. ¶¶ 88-90.) RLUIPA provides that "'No

government shall impose a substantial burden on the religious exercise of a person residing in or confined

to an institution' unless the burden furthers 'a compelling governmental interest,' and does so by the

'least restrictive means.'" *Cutter*, 544 U.S. 709 at 712. *See also* 42 U.S.C. § 2000cc-1(a)(1)-(2). This

proscription has force against programs or activities receiving federal financial support or when the

described burden affects interstate commerce. *Cutter*, 544 U.S. 709 at 715-716. However, "RLUIPA does

not authorize claims for monetary damages against state officers in either their official or individual

capacities. *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014). Plaintiff claims that "Defendants have

unjustifiable interfered with Plaintiffs [sic] religious belief [sic] without a penological interest; by way of

placing an unnecessary burden on their practice." (Compl. ¶ 90.) Additionally, since absent a request for

prospective relief, the Eleventh Amendment bars declaratory relief in the form of a statement that Plaintiff's constitutional right has been violated in the past, Mateo's only available relief under RLUIPA is injunctive relief. *See Hill v. Chapdelaine*, No. 3:16cv1656(VLB), 2017 U.S. Dist. LEXIS 1338, at *4-5. However, Defendants assert that Plaintiff was transferred from WCJ, thus mooting any claim for injunctive relief. (Defs.' Mot. at 25.) "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility . . . [but] the transfer does not moot an action for damages." *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.  1996). Since Plaintiff has only injunctive relief available to him under RLUIPA, his transfer moots any cause of action he might have had under the statute. Accordingly, Plaintiff's  RLUIPA claim is dismissed with prejudice.

Plaintiff's complaint asserts a cause of action sounding in the First Amendment due to "an unnecessary burden upon Plaintiffs religions [sic] [which] deprived them of their right to freedom of religion." (Compl. ¶¶ 85-87.) The Free Exercise Clause of First Amendment states, "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S Const. amend. I. Prison inmates are protected by the clause, though not necessarily to the same extent as others. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives."). In order to assert a Free Exercise claim, a plaintiff must allege that 1) the practice asserted is religious and the belief is sincerely held; 2) the challenged conduct infringes upon the religious belief; and 3) the challenged practice does not further a legitimate penological objective. *See Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988). While the Second Circuit has questioned whether a prisoner is required to make out a threshold showing that the disputed conduct substantially burdened a sincerely held religious belief, the basic nature of Free Exercise analysis has not changed. *See Cosby v. Tawana*, No. 3:19-cv-401 (MPS), 2019 U.S. Dist. LEXIS 72426 at *18-19. Plaintiff, however, has failed to plead any facts implicating his religious beliefs at all. (*See id.* ¶¶ 74-80.) While the allegations contain complaints made by other inmates concerning deficiencies in religion-

specific food provisions, Mateo makes no such showing. (*Compare* Compl. ¶¶ 74-80 *with* Compl. ¶¶19-42, 50-68.) Since Plaintiff has not pled any facts implicating his religious beliefs, his Free Exercise claim must also be dismissed without prejudice.

Plaintiff also alleges a cause of action sounding in the Fourteenth Amendment Equal Protection Clause. (Compl. ¶¶ 104-107.) ("Defendants, intentionally, with a complete disregard for the safety of and/or a penological interest treated Jewish, and Muslim inmates different from other religions, and caused a burden upon their practice of religion, by providing them with meals that were either rotten, undercooked, minimal, and/or the meals did not conform to their religious beliefs."). This claim refers to the beliefs of other inmates that WCJ and/or Aramark officials served food based on their religious beliefs and diets, such as Kosher or Halal, with substandard food, food that did not conform to their religious diets, or purposely minimized food portions on the belief that many inmates at WCJ had falsified their reported religious affiliations in order to obtain higher quality provisions. (*See* Compl. ¶¶ 19-37, 50-68.) Notably, Plaintiff has not made any such allegations about himself and the complaint suggest he was receiving a general, non-religious diet. (*See id.* ¶¶ 74-80.)

The Fourteenth Amendment provides in part, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV 14A § 1. While a claim that government actors treated persons of different religions differently more naturally is based in the First Amendment's Free Exercise and Establishment Clauses, there is precedent for Equal Protection litigation in the context of religious discrimination. *See generally Colo. Christian Univ. v. Weaver*, 534 F.3d 1245 (10th Cir. 2008); *Native American Council of Tribes v. Solem*, 691 F.2d 382 (8th Cir. 1982); *Cooper v. Pate*, 382 F.2d 518 (7th Cir. 1967). Since Plaintiff has not pled facts that would support a claim of religious discrimination, such claim(s) sounding in the Equal Protection Clause must be dismissed without prejudice. To the extent Plaintiff asserts a separate claim of discrimination, described as 'Count VII' in the complaint, the allegations are almost identical to the allegations described in his Fourteenth

11

Amendment claims under 'Count VIII'. (*Compare* Compl. ¶¶ 101-103 *with* Compl. ¶¶105-106.) Plaintiff asserts what can be described as a blanket 'discrimination' claim. He simply alleges that Defendant's treated him differently because of his religious affiliations. (*Id*. ¶¶ 101-102.) Since Plaintiff has not pled with any specificity any religious affiliation or discrimination, such claim must also be dismissed without prejudice.

In his complaint, Plaintiffs attempts to assert a claim pursuant to *Monell* against as Westchester, in that "Defendant Westchester County, failed to properly train, and supervise its subordinates and/or contractors to ensure that foods were being served in full satisfaction of established federal and state laws" and that "[d]efendant has allowed for a longstanding pattern of substandard food to be served to Plaintiffs and the inmate population at WCJ, and failed to ensure that religious meals met religious requirements and were adequate in nutrition." (*Id.* ¶¶ 82-83.) The landmark Supreme Court Case *Monell v. Dep't of Soc. Servs.,* abrogated the immunity from civil suit under § 1983 previously extended to municipal governments. 436 U.S. 658, 701 (1978). In doing so, the Court refused to extend the tort theory of *respondeat superior* to the realm of constitutional tort, holding that municipalities could be sued under *Monell* for a governmental policy or custom responsible for a constitutional violation, but not solely for a constitutional injury inflicted by a government employee or agent. *Id.* at 691, 694. Thus, to assert a *Monell* claim a plaintiff must allege the existence of the municipal policy or custom as well as a causal relationship between the policy or custom and the alleged constitutional harm. *See Jones v. Westchester County Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 417 (S.D.N.Y 2008). The existence of a policy or custom may be demonstrated  by 1) a formal policy; 2) "actions taken or decisions made by government officials responsible for establishing municipal policies"; 3) "a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymaking officials"; or 4) a failure by policy-makers to properly train or supervise to such an extent that it amounts to deliberate indifference of civil rights. *Id*.

Defendants claim that Plaintiff did not plead the requisite custom or policy to establish *Monell* liability against Westchester, or, assuming it is an agent of Westchester, Aramark. (Defs.' Mot. at 15-17.) While Plaintiff did not plead facts indicating that substandard food was served as the result of a formal policy enacted by Aramark or Westchester, the complaint, liberally construed, *does* indicate that WCJ had a widespread practice or custom which led to the food service deficiencies and which implies constructive notice by policymakers. Plaintiff's complaint alleges that WCJ has received over 100 inmate grievances with respect to Aramark's food service. (Compl. at 6.) The complaint also alleges that the food issues are well-known by the inmate population. (*See id.* ¶ 19.) Additionally, inmate Gomez purportedly reported that Defendants Boissy, Butler, Kohli, and Stewart failed to supervise inmate kitchen workers in wearing globes, hair nets, properly cleaning meal trays, and proper food temperature, *inter alia.* (*Id.* ¶ 30.) Assuming all plausible factual allegations and taking all reasonable inferences in Plaintiff's favor, the large number of inmate grievances, coupled with notice of the existence of food-related lawsuits, the allegations may rise to the level of custom under the *Monell* doctrine. Thus, Plaintiff's *Monell* claim should not be dismissed for failure to allege a custom or policy as Defendants suggest.

As previously discussed, in order to assert a *Monell* claim, a plaintiff must allege that the custom or practice violated a constitutional right. *Jones*, 557 F. Supp. 2d at 417. Plaintiff's complaint suggest a *Monell* claim under the Eighth Amendment (as incorporated against the States by the Fourteenth Amendment) sounding in 'deliberate indifference' as against all Defendants. Plaintiff alleges that Defendants, aware of civil rights violations at the WCJ, failed to intervene, take corrective action, and properly train and supervise kitchen staff. (Compl. ¶ 95.) Plaintiff also advances a separate cause of action against Westchester and Cheverko for 'Failure to Intervene'. (*Id.* ¶¶ 97-99.)

In order to establish individual liability under § 1983, a plaintiff must plead the personal involvement of every individual defendant. *Grullon v. City of New Haven*, 720 F.3d 133 Grullon v city of new haven 720 f3d 133, 138 (2d. Cir. 2013). Personal involvement in a constitutional violation can be

proven by 1) direct participation; 2) failure to remedy after being informed; 3) the creation or continuance of a policy or custom under which the violation occurred; 4) gross negligence in supervision; or 5) "deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement cannot be proven simply by virtue of someone being in a "high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). The receipt of correspondence from prisoners regarding a grievance is insufficient to establish personal involvement and thus, some further action involving the grievance is required. *Boddie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004). With the exception of describing their positions of responsibility in the Westchester DOC and Aramark , respectively, Plaintiff fails to mention Defendant Cheverko and or Mendoza's involvement in the alleged misconduct at issue. (*See* Compl. ¶¶ 10-11.) Thus, no § 1983 recovery can be had against said defendants. However, the complaint does mention the specific involvement of Boissy, Butler, Kohli, and Stewart, insofar as it claims that they permitted a disorderly and unsanitary kitchen environment to exist under their watch. (*See* Compl. ¶ 30.)

The Eighth Amendment prohibits, in part, "cruel and unusual punishments. U.S. Const. amend. VIII. The Second Circuit has stated that "[t]he conditions of a prisoner's confinement can give rise to an Eight Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). To assert such a cause of action, Plaintiff must allege facts to support 1) an objective element showing that the "prison official's transgression was 'sufficiently serious' and 2) a subjective element showing a *mens rea* of "'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). While prisons do not have to be comfortable, they do have to provide inmates with their basic needs and may not expose prisoners to conditions that pose an "unreasonable risk of serious damage to [their future health]. *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32-35.)

The first prong requires a showing that a prisoner's "conditions of [ ] confinement violate

contemporary standards of decency. *Id.* The second prong requires a showing that correctional officers had knowledge of and disregard an unreasonable risk to an inmate health or safety. *Id.* at 185-186.

"The Constitution 'require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *White v. Westchester Cty.*, 18 CV 990 (VB), 2018 U.S. Dist. LEXIS 208031, at *8 (S.D.N.Y 2018) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). In *White*, the court found that an inmate's conditions of confinement did not meet the objective prong of the Eighth Amendment analysis despite allegations of: 1) meat that was undercooked on three occasions (partially consumed by him on two of those occasions); 2) meat that was overcooked; 3) a meal tray containing a dead insect; 4) food containing hair on three occasions; 5) food served on molding and peeling trays. *Id.* at *9-10. The present case is distinguishable from *White*. First, the Plaintiff in *White* did not plead that the alleged unsanitary food service caused him any injury. *See id.* at *10. Here, Plaintiff indicates an allege injury from the state of the food being served . (*See generally* Compl.) Plaintiff specifically asserts he suffered from vomiting, nausea, and weight loss. (Compl. ¶ 78.) Second, while undercooked meat may be held insufficiently serious to meet the objective prong of the Eight Amendment test, this is much less the case for potential exposure to rat feces. (*See* Compl. ¶ 30.) Taking all inferences and constructions in Plaintiff's favor at this stage in the proceeding, Plaintiff has made out a claim of Eight Amendment violations by the  Defendants with more than just supervisory involvement. Given the history and breadth of inmate grievances regarding the food service at WCJ, Plaintiff has alleged sufficiently serious violations and the required *mens rea* of deliberate indifference. Thus, Defendants' motion to dismiss Plaintiff's Eighth Amendment claims as against the municipality, its agent, or the four personally involved employees is denied.

Plaintiff also alleges a separate cause of action for 'failure to intervene' by Defendants Westchester and Cheverko, purportedly brought upon by an indemnification clause Plaintiffs believe

shields the county from liability. (Compl. ¶¶ 97-99.) However, as Defendants assert in their motion to dismiss, such a claim is analyzed under the same Eighth Amendment framework as indicated in the preceding section. *Farmer*, 511 U.S. at 833-834; *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359-360 (S.D.N.Y 2009). Thus, in order to succeed, a plaintiff must show that the failure to intervene was objectively sufficiently serious and subjectively conducted with deliberate indifference. *Rosen*, 667 F. Supp. 2d 355 at 359-360. Other than to merely provide a description of his position and job duties, Plaintiff fails to allege any personal involvement on the part of Defendant Cheverko again. (*See compl.* ¶ 10.)

A municipality, however can be liable under the Eighth Amendment. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1988); *Collins v. City of Harker Heights*, 503 U.S. 115, 123-124 (1991). Plaintiff alleges that WCJ has received over a hundred inmate grievances regarding Aramark's food service with varying levels of food inadequacy. Such allegations may be to support a finding that Westchester had knowledge of and disregarded a substantial risk to the health of its inmates. Given the substantial leniency due to *pro se* plaintiffs at this stage in the civil litigation process, Defendants' motion to dismiss Plaintiff's Eighth Amendment claims is granted without prejudice only as to Cheverko and Mendoza.

It is well settled, the doctrine of qualified immunity shields government officials from civil liability when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Haslinger v. Westchester Cty.*, 7:18-cv-05619 (PMH), 2020 U.S. Dist. LEXIS 75217, at *6 (S.D.N.Y 2020) (*quoting Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015)). Qualified immunity is an affirmative defense, ordinarily asserted in an answer to a complaint, but which may also be asserted in a 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004); *Haslinger*, 2020 U.S. Dist. LEXIS 75217 at *5. If a finding of qualified immunity can be made based upon facts evident from the "face of the complaint", such a defense can defeat a complaint imputing liability. *McKenna*, 386 F.3d at 436. However, a defendant

presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgement must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, . . . the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 436 (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

The burden is on a defendant to establish entitlement to qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The qualified immunity inquiry consists of three prongs:  "(1) whether plaintiff has shown facts making out violation of a constitutional [or statutory] right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [officials] to believe the conduct at issue was lawful." *Gardner v. Murphy*, 613 Fed. Appx. 40, 41 (2d Cir. 2015) (*quoting Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

Defendants assert that as Westchester DOC Commissioner, Cheverko is entitled to qualified immunity from suit as "no conduct that could be attributable to [ ] Cheverko amounted to a constitutional violation [and] . . . there is no evidence that any of his actions were anything other than 'objectively reasonable'. (Defs.' Mot. at 27.) While Defendants are correctly that Plaintiff's complaint fails to attribute any conduct to Cheverko and merely cites to his supervisor position, the burden is not upon the Defendant to demonstrate entitlement to the defense. Other than to allege in conclusory fashion that Cheverko's actions were not unreasonable and that no conduct of his amounted to a constitutional violation, Defendant fail to establish entitlement to the relief requested. The Court is, however, cognizant that multiple claims have been dismissed as against Cheverko for lack of personal involvement.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint pursuant to Rule 12(b)(6) is  GRANTED in part and DENIED in part. Plaintiff's claim(s) asserted pursuant to RLUIPA are dismissed with prejudice. The claims asserted pursuant to RFRA are dismissed with prejudice as to the

state entity and dismissed without prejudice as to the individually named Defendants. Plaintiff's First Amendment Free Exercise Clause claims are dismissed without prejudice. Plaintiff's Eighth Amendment failure to intervene claims are dismiss without prejudice only as to Defendants Cheverko and Mendoza. Defendants' motion to dismiss Plaintiff's Eighth Amendment cruel and unusual punishment claims as against the municipality, its agent, or the four personally involved employees is denied.

Plaintiff shall have until November 14, 2020 to file an Amended Complaint consistent with this Opinion and Order. An Amended Complaint form is attached to this Order.  Failure to timely file an Amended Complaint may result in the dismissal with prejudice of those claims dismissed in this Opinion and Order without prejudice. In the event Plaintiff files an Amended Complaint, the remaining Defendant(s) shall have 21 days from date of filing of the Amended Complaint to file an answer or otherwise respond.

In the event Plaintiff does not file an Amended Complaint, the remaining Defendants shall file an Answer as to the surviving claims of the Complaint on or before November 30, 2020.  The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before December 21, 2020.

The Clerk of Court is respectfully directed to terminate the motion(s) at ECF No. 30, and to terminate Defendants Cheverko and Mendoza. The Clerk of the Court is further directed to mail a copy of this Opinion and Order to Plaintiff at the last known address listed on the docket, and to show proof of service on the docket.


Dated: September 29, 2020                          SO ORDERED:
      White Plains, New York

                                       _____
                                       HON. NELSON S. ROMÁN
                                      United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED**

**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial                    Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                         Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Page 3

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____


Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

Page 5

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing:  _____

UNITED STATES DISTRICT COURT                              Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

                                                    CIVIL CASE DISCOVERY PLAN
                              Plaintiff(s),         AND SCHEDULING ORDER

        - against -

                              Defendant(s).         _____ CV _____ (NSR)

--------------------------------------------------------------x

     This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.     All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.     This case [is] [is not] to be tried to a jury.

3.     Joinder of additional parties must be accomplished by _____.

4.     Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5.     Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.     First request for production of documents, if any, shall be served no later than _____.

7.     Non-expert depositions shall be completed by _____.

     a.     Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

     b.     Depositions shall proceed concurrently.

     c.     Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.   Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.   Requests to Admit, if any, shall be served no later than _____.

10.   Expert reports shall be served no later than _____.

11.   Rebuttal expert reports shall be served no later than _____.

12.   Expert depositions shall be completed by _____.

13.   Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.   **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.   Any motions shall be filed in accordance with the Court's Individual Practices.

16.   This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.   The Magistrate Judge assigned to this case is the Hon. _____.

18.   If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.   The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York
             _____

_____
Nelson S. Román, U.S. District Judge